UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

THOMAS BURNS,

                        Petitioner,

        v.                                                    9:22-CV-0381
                                                              (GTS)
MICHAEL CAPRA,

                        Respondent.
_____

APPEARANCES:                                    OF COUNSEL:

THOMAS BURNS
Petitioner, pro se
16-A-1856
Sing Sing Correctional Facility
354 Hunter Street
Ossining, NY 10562

HON. LETITIA JAMES                              Michelle Elaine Maerov, ESQ.
Attorney for Respondents                        Ass't Attorney General
Attorney General of New York
28 Liberty Street
New York, NY 10005

Glenn T. Suddaby
Senior United States District Judge

## DECISION and ORDER

### I.    INTRODUCTION

        Petitioner pro se Thomas Burns seeks federal habeas corpus relief pursuant to

28 U.S.C. § 2254.  Dkt. No. 1, Petition ("Pet."); Dkt. No. 1-1, Supporting Exhibits.

Respondent opposed the Petition.  Dkt. No. 17, Answer; Dkt. No. 17-1, Response

Memorandum ("Resp."); Dkt. No. 17-2–17-10, Supporting Exhibits.  Petitioner replied.

Dkt. No. 23, Traverse ("Trav.").[1]  For the reasons below, the Petition is dismissed and denied in its entirety.

## II.    RELEVANT BACKGROUND

Petitioner's 2016 conviction arose out of two separate incidents in late 2013 and early 2014.  Dkt. No. 17-3 at 19-29.  Each incident is discussed below.

### A.  Hellijas Assault

Throughout 2013, Joseph Hellijas and petitioner became acquainted from "being on the street[s]" in Schenectady County.  Dkt. No. 17-7 at 154-55.  On December 29, 2013, Hellijas encountered petitioner while picking up beer in his neighborhood.  *Id.* at 159-60; Dkt. No. 17-3 at 19.  Petitioner confronted Hellijas, accusing Hellijas of spreading a rumor that petitioner snitched to the police in an unrelated matter.  Dkt. No. 17-3 at 427.  Petitioner demanded an apology and Hellijas, confused, asked "[s]orry for what[?]"  Dkt. No. 17-7 at 162.  Petitioner then punched Hellijas in the face.  Dkt. No. 17-3 at 19-20, 428.  Hellijas stumbled and did not attempt to fight back but instead walked away from petitioner.  *Id.* at 20, 428.  Sufficiently inebriated to dull the immediate pain, Hellijas did not seek medical attention.  *Id.* at 428.  As Hellijas sobered up, he felt intense pain in his jaw and sought medical attention early the following morning.  *Id.* After an examination, doctors informed Hellijas that petitioner broke his jaw in two places.  *Id.*  The next day, petitioner underwent surgery to repair the fractures.  *Id.*  After surgery, the surgeon informed Hellijas that the punch also broke several of his teeth which required dental attention.  *Id.*  Hellijas eventually had multiple teeth removed as a result of petitioner's punch.  *Id.*

---

[1] For the sake of clarity, citations to parties' submissions refer to the pagination generated by CM/ECF, the Court's electronic filing system.

## B. Bingham Shooting

Petitioner and Mervin Bingham met in late 2013.  Dkt. No. 17-3 at 428; Dkt.

No.17-7 at 613.  After a fire destroyed Bingham's rental apartment in January 2014,

Bingham and his girlfriend, Ashante Ayala, moved into petitioner's house.  Dkt. No. 17-3

at 428.  The cohabitation lasted less than a month before petitioner evicted Bingham

following various disagreements.  Dkt. No. 17-7 at 625; Dkt. No. 17-3 at 428.  After

Bingham's eviction, petitioner and Bingham saw each other a few times but the

meetings were not cordial, both clearly upset with how their relationship broke down.

Dkt. No. 17-7 at 624.

On the night of April 19, 2014, Bingham exited a store to see petitioner walking

down the street.  Dkt. No. 17-3 at 429; Dkt. No. 17-7 at 638-39.  Upon making eye

contact with each other, petitioner flashed a .45 caliber pistol at Bingham and began to

berate Bingham about their past disagreements.  Dkt. No. 17-3 at 429.  The argument

escalated and petitioner pointed the pistol in Bingham's face.  *Id.*; Dkt. No. 17-7 at 642.

Bingham then tried to grab the gun, and, after a brief scuffle, petitioner freed himself,

took a step back from Bingham, and fired a shot at Bingham's torso.  Dkt. No. 17-3 at

429.  The bullet struck Bingham, knocking him to the ground, after which petitioner

walked away from the scene.  *Id.*; Dkt. No. 17-7 at 646.  Bingham survived the gunshot

but remained paralyzed below the waist.  Dkt. No. 17-3 at 429.

## C. Arrest and Indictment

On July 2, 2014, police arrested petitioner in connection with the Bingham

shooting.  Dkt. No. 17-3 at 429.  Following a further investigation, police also tied

petitioner to Hellijas' assault.  *Id.* at 22, 429-30.  On July 30, 2014, in connection with

both the Bingham and Hellijas incidents, a Schenectady County grand jury indicted petitioner on: (1) one count of Attempted Murder in the Second Degree (Bingham incident); (2) one count of Assault in the First Degree (Bingham incident); (3-4) two counts of Criminal Possession of a Weapon in the Second Degree; (5) one count of Reckless Endangerment in the First Degree; (6) one count of Assault in the Second Degree (Hellijas incident); and (7) one count of Criminal Possession of a Weapon in the Third Degree.[2]  *Id.* at 464-68.  Petitioner's case proceeded through discovery and motion practice without a request for severance of the Hellijas and Bingham charges. *Id.* at 430.

Petitioner elected for a jury trial.  Dkt. No. 17-3 at 430.  At trial, Hellijas testified about the incident with petitioner and his injuries.  *Id.*; Dkt. No. 17-7 at 160-174. Petitioner testified and admitted to striking Hellijas on December 29, 2013.  Dkt. No. 17-3 at 430; Dkt. No. 17-7 at 1172-73.

Bingham also testified, identifying petitioner as his shooter.  Dkt. No. 17-7 at 639-50.  Ayala, Bingham's girlfriend, testified that Bingham called her immediately after the shooting and identified petitioner as the culprit and that, a few weeks after the incident, petitioner apologized to Ayala for shooting Bingham.  Dkt. No. 17-3 at 430, 500; Dkt. No. 17-7 at 983.  A neighborhood witness of the shooting also testified that she heard the gunshot and saw a man matching petitioner's description walking away from the scene. Dkt. No. 17-3 at 430.  Further, petitioner's daughter testified that petitioner sent her an article about the shooting and stated that he faced prison in connection with the shooting.  *Id.*  In his defense, petitioner offered convoluted, and at times conflicting,

---

[2]  A Schenectady County grand jury also filed a charge of animal abuse based on a third separate incident.  Dkt. No. 17-3 at 467.  The prosecution dropped the charge before trial.

alibis as to his whereabouts on the day of the Bingham shooting.  Dkt. No. 17-7 at 1140-48, 1325-48.  Petitioner also introduced a witness who testified that the stippling[3] on Bingham's clothing indicated that Bingham was shot at a distance of less than one-foot, conflicting Bingham's testimony that petitioner took a large step back before firing at Bingham.  Dkt. No. 17-8 at 60-91.

Following closing arguments, a New York Supreme Court, County of Schenectady jury ruled petitioner not guilty of count 1, Attempted Murder in the Second Degree, but found petitioner guilty of the lesser included charge of Assault in the Second Degree.  Dkt. No. 17-9 at 54.  The jury then convicted petitioner of all the remaining charges.[4]  Dkt. No. 17-9 at 54-56.  On May 2, 2016, the court imposed an aggregate sentence of 27 years, followed by 5 years of post-release supervision.  Dkt. No. 17-10 at 22-26.

### D.  Direct Appeal

Petitioner timely appealed his conviction to the New York Appellate Division, Third Department ("Third Department").  Dkt. No. 17-3 at 1-70.  Between petitioner's counseled brief and his pro se reply brief, petitioner raised *inter alia* the following claims: (1) the Hellijas and Bingham assaults were improperly joined; (2) the trial court failed to give a lesser included offense instructions on the counts 1 and 2, and counts 1 and 2 were multiplicitous; (3) the prosecutor engaged in 16 incidents of misconduct throughout the trial; and (4) trial counsel's cumulative errors deprived petitioner of his right to effective counsel.  Dkt. No. 17-3 at 1-70, 327-57.

---

[3]  The witness defined stippling as the visible "impact of powder burning or unburnt powder that are going to show up on a surface around [a] bullet hole."  Dkt. No. 17-8 at 80.
[4]  After his conviction, petitioner filed a § 330.30 motion to set aside the judgement that the court denied. Dkt. No. 17-3 at 431.

On November 25, 2020, the Third Department denied petitioner's appeal. Dkt. No. 17-3 at 760-67. The Third Department first held petitioner received effective assistance of counsel. *Id.* at 761-63. The court found that trial counsel was not ineffective for failing to sever the Hellijas and Bingham counts, noting that petitioner "failed to establish that a motion for severance would have been granted or that he suffered any prejudice from the lack of severance[.]" *Id.* at 762. Next, the Third Department found petitioner's claim that counsel failed to request lesser included offense charges for count 1 and count 2 of the indictment factually inaccurate as the record reflected that counsel did request these charges. *Id.* at 763. The Third Department also noted that "we [are not] persuaded that counsel's decision to obtain an expert witness, whom [the trial court] ultimately deemed unqualified to testify on a specific issue, was anything other than a trial tactic that proved to be unsuccessful and does not, in and of itself, constitute ineffective assistance of counsel[.]" *Id.*

The Third Department next turned to petitioner's prosecutorial misconduct claims. Dkt. No. 17-3 at 763-64. The court first found that petitioner failed to object to the prosecutor's comments on petitioner's religion and parenting at trial, and, therefore, found the two claims unpreserved for appellate review. *Id.* at 763. The Third Department noted that even if the "issues [were] properly before us, we would find [no fault with] the challenged questions" as defense counsel raised the issues during petitioner's direct testimony. *Id.* The Third Department then found all of petitioner's remaining preserved contentions meritless, noting that a review of "the record as a whole fails to disclose that the prosecutor engaged in a flagrant and pervasive pattern of

prosecutorial misconduct so as to deprive defendant of a fair trial." *Id.* at 764 (internal quotation marks and citations omitted).

The Third Department also found that the trial court did not err in refusing a jury charge on the lesser included offense of assault in the third degree as to count 6 (the Hellijas assault charge). Dkt. No. 17-3 at 764-65. The Third Department explained that Hellijas suffered a fractured jaw and lost numerous teeth, and "[b]ased upon this evidence, no reasonable view of the evidence could support a finding [of the lesser included charge as] the victim sustained . . . a serious physical injury." *Id.* at 765 (internal quotation marks and citations omitted).

The Third Department then rejected petitioner's claim that the trial court did not conduct the necessary minimum inquiry into petitioner's request for a new counsel. Dkt. No. 17-3 at 765-66. Examining the record, the Third Department noted that the trial court held two in camera hearings inquiring about petitioner's relationship with counsel, and the court found that such efforts satisfied the minimum inquiry standard. *Id.*

Lastly, the Third Department found petitioner's remaining contentions unpreserved for appellate review and affirmed petitioner's guilty verdict. Dkt. No. 17-3 at 766.

Petitioner sought leave to appeal to the New York State Court of Appeals. Dkt. No. 17-3 at 768-78. The Court of Appeals denied leave on March 21, 2022. *Id.* at 783.

Petitioner then filed the instant Petition on April 13, 2022. Pet. at 1.

## III.    PETITION

Petitioner challenges his 2016 judgment of conviction in New York Supreme Court. Pet. 1-12. Petitioner argues he is entitled to federal habeas corpus relief

because: (1) his grand jury proceedings were defective, *id.* at 5-7; (2) the trial court

failed to conduct a minimal inquiry into petitioner's request for new counsel, *id.* at 7; (3)

the trial court improperly joined the Hellijas and Bingham assaults, *id.* at 8; (4) counts 1

and 2 of the indictment were multiplicitous, *id.* at 8-9; (5) rampant prosecutorial

misconduct violated his right to a fair trial, *id.* at 9; and (6) of ineffective assistance of

trial counsel, *id.* at 9-10.  Petitioner does not specify the relief he seeks.

## IV.    DISCUSSION

### A.  Standard of Review

Prior to reviewing petitioner's claims, the Court notes the heightened standard of

review under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").

AEDPA requires a federal court sitting in habeas review to defer to a state court's

adjudication of claims made on the merits unless the "decision [] was contrary to, or

involved an unreasonable application of, clearly established federal law[] . . . or . . . was

based on an unreasonable determination of the facts in light of the evidence presented

in the State court proceeding."  28 U.S.C. § 2254(d).  Thus, a federal court may not

grant relief "simply because that court concludes in its independent judgment that the

relevant state-court decision applied . . .  federal law erroneously or incorrectly."

*Williams v. Taylor*, 529 U.S. 362, 411 (2000).  Rather, a federal court may only grant

relief if it finds the state court's application of federal law or fact "objectively

unreasonable."  *Id.* at 409.

Thus, to find for petitioner on claims that the state courts found meritless, this

Court must hold the state court's application of fact or federal law objectively

unreasonable.  *Williams*, 529 U.S. at 409.

**B. Claim 1: Defective Grand Jury**

Petitioner's seeks review of his state grand jury proceedings.  Pet. at 5-7.
However, the Constitution does not guarantee a right to a grand jury in a state criminal
prosecution.  *See LanFranco v. Murray*, 313 F.3d 112, 118 (2d Cir. 2002) (finding that
the Fifth Amendment right to a grand jury indictment is not incorporated by the Due
Process Clause of the Fourteenth Amendment, and, therefore, does not apply to the
states); *see also Lopez v. Riley*, 865 F.2d 30, 32 (2d Cir. 1989) ("[D]eficiencies in the
state grand jury proceedings are [not] cognizable in a habeas corpus proceeding.");
*Davis v. Mantello*, 42 F. App'x 488, 490 (2d Cir. 2002) ("Claims of deficiencies in state
grand jury proceedings are not cognizable in a habeas corpus proceeding in federal
court.").  Under 28 U.S.C. § 2254(a), this Court may only "entertain an application for a
writ of habeas corpus . . . on the ground that [a petitioner] is in custody in violation of the
Constitution or laws or treaties of the United States."  § 2254(a); *see also Thomas v.
Larkin,* No. 1:12–CV–2899, 2013 WL 5963133, at *13 (E.D.N.Y. Nov. 7, 2013)
("[F]ederal courts may not issue the writ of habeas corpus on the basis of a perceived
error of state law[.]") (cleaned up).  Accordingly, the Court finds petitioner's claim non-
cognizable.  Count I is denied.

**C. Claim 2: Minimal Inquiry**

Petitioner claims that the trial court failed to make a minimum inquiry into his
requests for substitute counsel, infringing on his right to effective counsel under the
Sixth Amendment.  Pet. at 7.

"It is settled that where a defendant voices a seemingly substantial complaint
about [assigned] counsel, the court should inquire into the reasons for dissatisfaction."

*McKee v. Harris*, 649 F.2d 927, 933 (2d Cir. 1981) (internal quotation marks omitted).  To succeed on a substitution claim, a defendant must "demonstrate good cause for the substitution of assigned counsel."  *Nelson v. Smith*, No. 9:04-CV-0564 (LEK/RFT), 2008 WL 2357098, at *4 (N.D.N.Y. June 4, 2008).

Once prior to trial and once during his trial petitioner requested new counsel, accusing trial counsel of being ineffective.  Trav. at 32.  Specifically, petitioner stated that counsel refused to communicate with petitioner.  *Id.*  After both requests for new counsel, the trial court held two in camera hearings inquiring about petitioner's relationship with counsel.  Dkt. No. 17-3 at 765.  The Third Department found such efforts satisfied the minimum inquiry standard and, further, petitioner's complaints "did not create good cause for the substitution of trial counsel[.]"  *Id.* at 765-66.  Therefore, to rule for petitioner on Claim 2, this Court must find the state courts' decision to be "objectively unreasonable."  *Williams*, 529 U.S. at 409.

Considering petitioner's two allegations were supported with little to no evidence, this Court finds the trial court went above and beyond its duty in holding two in camera hearings inquiring about petitioner's relationship with counsel.  Further, petitioner has not demonstrated any "good cause" to replace trial counsel.  An examination of the record reveals that trial counsel went to extreme lengths to communicate with petitioner, even meeting with petitioner privately after cross-examining each witness to ensure all of petitioner's questions were asked.  Dkt. No. 17-3 at 450-51; *see e.g.* Dkt. No. 17-7 at 280.  Thus, this Court refuses to find that the trial court acted unreasonably.

Even if this Court found the trial court did not make a sufficient inquiry into petitioner's requests, petitioner suffered no prejudice from the trial court's alleged failure

to inquire into the attorney/client relationship.  Where "the failure to inquire causes the [petitioner] no harm, that [failure] cannot of itself be a basis for granting the writ [of habeas corpus]." *McKee*, 649 F.2d at 933.  Indeed, if the "proffered reasons [for dissatisfaction with counsel] are insubstantial and the defendant receives competent representation from counsel, the court's failure to inquire further constitutes harmless error." *Carpenter v. Conway,* No. 2:07–CV–3602, 2011 WL 795860, at *5 (E.D.N.Y. Feb. 25, 2011) (citing *McKee,* 649 F.2d at 933).  Here, the proffered reasons for petitioner's dissatisfaction were conclusory and not supported by the record.  Moreover, as discussed in Section IV.G below and evident from a review of the record, trial counsel provided competent representation, and, therefore, this Court considers any alleged failure by the trial court to constitute harmless error.

Accordingly, the alleged failure of the trial court to make a minimal inquiry did not result in a violation of the Sixth Amendment.

### D.  Claim 3: Improper Joinder

Petitioner asserts that the trial court erred when it did not sever the Hellijas assault (Count 6 of the indictment) from the Bingham shooting (Counts 1-5, 7).  Pet. at 8.  Petitioner claims the failure to sever resulted in a violation of his Sixth Amendment right to a fair trial.  *Id.*  Respondent argues that the claim is: (1) procedurally barred; and (2) meritless.[5]  Resp. at 41-45.

#### 1.  Procedural Bar

---

[5]  Respondent also argues that the claim is non-cognizable.  Resp. at 43.  The respondent is correct that petitioner's Claim 3 includes an argument that the trial court violated C.P.L § 200.20 which is non-cognizable.  However, petitioner also ties his improper joinder claim to his Sixth Amendment right to a fair trial, creating a federal question properly before this Court.  Pet. at 8.

Respondent first argues that Claim 3 is procedurally barred under the adequate and independent doctrine.[6]  Resp. at 41-43.  A procedural default in a federal habeas case occurs "if the state court's rejection of a federal claim rests on a state law ground – such as the operation of a state procedural rule – that is both independent of the federal question and adequate to support the judgment."  *Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir. 2014) (internal quotation marks omitted); *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991) (holding that "when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement[,]" federal habeas review is barred by the independent and adequate state ground doctrine).  Procedural default precluding federal habeas review applies only "if the last state court rendering a judgment in the case rests its judgment on the procedural default."  *Harris v. Reed*, 489 U.S. 255, 262 (1989); *see also Green v. Travis*, 414 F.3d 288, 294 (2d Cir. 2005).

Respondent correctly contends that the Third Department rejected the improper joinder claim on the contemporaneous objection rule, an independent and adequate state ground under *Jackson*.  Resp. at 41.  "New York's contemporaneous objection rule provides that a party seeking to preserve a claim of error at trial must lodge a protest to the objectionable ruling 'at the time of such ruling . . . or at any subsequent time when the [trial] court had an opportunity of effectively changing the same.'"  *Whitley v. Ercole*, 642 F.3d 278, 286 (2d Cir. 2011) (quoting C.P.L § 470.05(2)).  "The rule has been interpreted by New York courts to require, 'at the very least, that any matter which a

---

[6]  Respondent also argues that the claim is procedurally barred because "petitioner failed to present it as a violation of the United States Constitution when he raised [the claim] on appeal."  Resp. at 41. Respondent is factually incorrect, as petitioner raised the constitutional claim in his appellate brief.  *See* Dkt. No. 17-3 at 37.

party wishes'" to preserve for appellate review be "'brought to the attention of the trial court at a time and in a way that gave [the trial court] the opportunity to remedy the problem and thereby avert reversible error.'"  *Id.* (quoting *People v. Luperon,* 623 N.Y.S.2d 735, 738-39 (1995)).

Here, petitioner did raise an objection to the failure to sever but not until after petitioner's sentencing, too late for the trial court to have "the opportunity to remedy the problem."  Dkt. No. 17-3 at 118-120; *Whitley*, 642 F.3d at 286 (internal quotation marks omitted).  Thus, the Third Department held the issue unpreserved for its review based on the contemporaneous objection rule.[7]  Dkt. No. 17-3 at 766.  Such a holding constitutes an adequate and independent state law ground for dismissal, and, thus, precludes this Court from habeas review.  *See Rutigliano v. Lamanna*, No. 9:19-CV-0745 (GLS/ML), 2022 WL 4348580, at *7 (N.D.N.Y. July 20, 2022) ("The Third Department's holding that Petitioner's argument was unpreserved, constitutes an adequate and independent state law ground, which generally precludes habeas review.").

Therefore, this Court finds petitioner's improper joinder claim procedurally barred. We may only review the claim if petitioner can establish either cause for noncompliance and resulting prejudice or actual innocence.  *Rutigliano*, 2022 WL 4348580, at *7 (finding a "narrow exception to the preservation rule" where a petitioner can "demonstrate[] cause for [] procedural default and actual prejudice"); *Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002) (finding an exception to the preservation rule where a

---

[7]  The Third Department did discuss the merits of the improper joinder issue but in the context of petitioner's ineffective assistance of counsel claim.  Dkt. No. 17-3 at 762.

petitioner can demonstrate "a fundamental miscarriage of justice, i.e., that he is actually innocent of the crime for which he has been convicted").

Here, petitioner does not contend, nor does the record reflect, petitioner's actual innocence or any cause for petitioner's noncompliance.[8]  Thus, the Court see no reason to lift the procedural bar to Claim 3.  As such, the Court dismisses the claim as procedurally barred under the independent and adequate state ground doctrine.

### 2.  Claim 3 Dismissed on the Merits

Even if not procedurally barred, the Court finds Claim 3 meritless.  An erroneous "[j]oinder of offenses rises to the level of a constitutional violation only if it 'actually render[s] petitioner's state trial fundamentally unfair and hence, violative of due process.'"  *Herring v. Meachum*, 11 F.3d 374, 377 (2d Cir. 1993) (quoting *Tribbitt v. Wainwright*, 540 F.2d 840, 841 (5th Cir. 1976)).  "[W]here a defendant is claiming a due process violation based upon joinder of offenses, he must, to succeed, go beyond the potential for prejudice and prove that *actual* prejudice resulted from the events as they unfolded during the joint trial."  *Id.* at 377-78.  Habeas courts generally have refused to find actual prejudice when the crimes are "distinct and easily compartmentalized."  *Id.* at 378; *Burrows v. Herbert*, No. 6:02-CV-6314, 2009 WL 1514917, at *5 (W.D.N.Y. June 1, 2009) (finding the proof, "as presented at trial, was such that it was able to be easily considered separate in the minds of the jury[,]" and, thus, avoid confusion and prejudice); *see also United States v. Chang An-Lo*, 851 F.2d 547, 556 (2d Cir. 1988) (finding that defendants were not substantially prejudiced by joint trial where "the

---

[8]  Petitioner does argue that his trial counsel was ineffective for failing to move to separate the Hellijas and Bingham charges.  However, the claim is meritless, *see infra* Section IV.G.1, and, therefore, cannot be used to demonstrate "cause" to overcome the procedural bar petitioner faces in Claim 3.

evidence with respect to each of the defendants was adequately straightforward that the jury could consider it without any significant spillover effect.").

Here, the Hellijas assault and the Bingham shooting were distinct and easily compartmentalized. The incidents were four months apart and involved different victims; further, one involved a punch, the other involved a gun. Based on the vast differences, the jury could easily keep the crimes "separate in the[ir] minds[.]" *Burrows*, 2009 WL 1514917, at *5. Further, for both crimes, the evidence was "adequately straightforward." *Chang An-Lo*, 851 F.2d at 556. In fact, petitioner admitted to punching Hellijas at trial, thus negating the risk that the jury relied on any Bingham shooting evidence when convicting petitioner of the Hellijas assault. Dkt. No. 17-7 at 1172-73. The prosecution also introduced overwhelming evidence of petitioner's guilt in the Bingham shooting, including testimony from the victim's girlfriend and petitioner's daughter that petitioner admitted to shooting Bingham. Dkt. No. 17-6 at 983; Dkt. No. 17-3 at 430. Accordingly, the easily compartmentalized and straightforward evidence for both crimes convince the Court that petitioner suffered no actual prejudice from the joinder. Therefore, the Court holds that petitioner's due process rights were not violated, and, as such, petitioner's Claim 3 is dismissed.

### E. Claim 4: Multiplicitous Counts

Petitioner alleges that his convictions of first- and second-degree assault arising out of the Bingham shooting rendered the indictment multiplicitous, violating the double jeopardy clause of the Fifth Amendment. Pet. at 8-9; Trav. at 22-24. Respondent counters, stating that the claim is procedurally barred. Resp. at 45-46.

Respondent argues that the adequate and independent state law ground bars Claim 4. Resp. at 46. As discussed in Section IV.D.1 above, a procedural default in federal habeas cases occurs "if the state court's rejection of a federal claim rests on a state law ground – such as the operation of a state procedural rule – that is both independent of the federal question and adequate to support the judgment." *Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir. 2014) (internal quotation marks omitted). Respondent contends that the Third Department rejected petitioner's multiplicitous claim on an independent and adequate state ground; specifically, the contemporaneous objection rule. Resp. at 46. Respondent is correct. Petitioner never raised an objection in trial court, and, therefore, the Third Department held the issue unpreserved. Dkt. No. 17-3 at 439, 766. Such a holding constitutes an adequate and independent state law ground for dismissal, and, thus, precludes this Court from habeas review. *See Rutigliano*, 2022 WL 4348580, at *7 ("The Third Department's holding that Petitioner's argument was unpreserved, constitutes an adequate and independent state law ground, which generally precludes habeas review.").

Accordingly, this Court finds petitioner's multiplicitous claim procedurally barred and may only review the claim if petitioner can establish either cause for noncompliance and resulting prejudice or actual innocence. *Rutigliano*, 2022 WL 4348580, at *7 (finding a "narrow exception to the preservation rule" where a petitioner can "demonstrate[] cause for [] procedural default and actual prejudice"); *Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002) (finding an exception to the preservation rule where a petitioner can demonstrate "a fundamental miscarriage of justice, i.e., that he is actually innocent of the crime for which he has been convicted").

Here, petitioner does not contend, nor does the record reflect, petitioner's actual innocence or any cause for petitioner's noncompliance.  Thus, this Court see no reason to lift the procedural bar to Claim 4.  As such, the Court dismisses the claim as procedurally barred under the independent and adequate state ground doctrine.

**F.  Claim 5: Prosecutorial Misconduct**

Petitioner challenges the prosecution's conduct during the direct examination of Bingham, petitioner's cross-examination, and the prosecution's summation. Pet. at 9; Dkt. No. 17-3 at 57-66.  In total, petitioner brings 16 prosecutorial misconduct claims.

As to the questioning of Bingham, petitioner alleges the prosecution:

(1) improperly asked Bingham to speculate about petitioner's state of mind during the shooting, Dkt. No. 17-3 at 63; and

(2) improperly questioned Bingham about his grand jury testimony, including reading leading grand jury questions into the trial record, *id.* at 63-64.

During the cross-examination of petitioner, petitioner claims that the prosecution improperly:

(3)  questioned petitioner's religious faith, Dkt. No. 17-3 at 58-59;

(4) asked petitioner about his parenting, *id.*;

(5) asked petitioner if he thought he was "pretty much smarter than everyone else[,]" *id.* at 60;

(6) questioned petitioner about the number of judges who previously presided over the case, *id.*;

(7) commented on petitioner's need for assigned counsel, *id.* at 64;

Lastly, petitioner alleges that the prosecution erred in its summation when it improperly:

> (8) referred to statements that had not been admitted into evidence or produced to the defense, Dkt. No. 17-3 at 60;
>
> (9) implied that defense counsel thought petitioner guilty of shooting Bingham, *id.* at 61;
>
> (10)    stated that petitioner committed the crimes, *id.* at 61-62;
>
> (11)    described Bingham and his testimony as "candid[,]" *id.* at 62;
>
> (12)    described two other witnesses as those "who respect the oath and respect the truth[,]" *id.* at 62;
>
> (13)    described witnesses who testified for the prosecution pursuant to plea deals as "candid[,]" *id.*;
>
> (14)    stated that the prosecution's cross-examination of petitioner "maybe overdid it[,]" *id.*;
>
> (15)    claimed petitioner's proposed expert witness was a "hired gun[,]" *id.* at 62-63;
>
> (16)    attempted to explain law to the jury, *id.* at 63.

All 16 of petitioner's claims fail.  Misconduct claims 3 and 4 are procedurally barred and meritless.  Claims 1-2, 5-16 are meritless.

**1.  Procedurally Barred**

Misconduct claims 3 and 4 are barred by the adequate and independent state law ground.[9]  As discussed in Section IV.D.1 above, a procedural default in a federal habeas case occurs "if the state court's rejection of a federal claim rests on a state law ground – such as the operation of a state procedural rule – that is both independent of the federal question and adequate to support the judgment."  *Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir. 2014) (internal quotation marks omitted).  Respondent contends that the Third Department rejected misconduct claims 3 and 4 on an independent and adequate state ground; specifically, the contemporaneous objection rule.  Resp. at 51. Respondent is correct.  Petitioner never raised objections on either point during his trial, and, therefore, the Third Department held the issues unpreserved.  Dkt. No. 17-3 at 763.  Such a holding constitutes an adequate and independent state law ground for dismissal, and, thus, precludes this Court from habeas review.  *See Rutigliano*, 2022 WL 4348580, at *7 ("The Third Department's holding that Petitioner's argument was unpreserved, constitutes an adequate and independent state law ground, which generally precludes habeas review.").

Nor can petitioner find an exception to avoid the procedural bar as petitioner cannot prove, and, in fact, does not contend, that he is actually innocence or has any cause for his noncompliance.  As such, the Court dismisses misconduct claims 3 and 4 as procedurally barred under the independent and adequate state ground doctrine.

### 2.  Meritless Claims

---

[9]  Respondent argues that the adequate and independent state law ground bars misconduct claims 3-6 and 9-14.  Resp. at 51.  However, a closer examination of the Third Department's decision finds that the Third Department only rejected misconduct claims 3 and 4 as unpreserved.  Dkt. No. 17-3 at 763.

"[P]rosecutorial misconduct cannot give rise to a constitutional claim unless the prosecutor's acts constitute egregious misconduct." *Miranda v. Bennett*, 322 F.3d 171, 180 (2d Cir. 2003) (internal quotation marks omitted). To assess if misconduct rises to an egregious level, a reviewing court must assess the alleged misconduct "in the context of the entire trial." *Donnelly v. DeChristoforo*, 416 U.S. 637, 639 (1974). "The relevant inquiry, therefore, is whether the prosecutor's conduct 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Sheard v. Lee*, No. 1:18-CV-2125, 2019 WL 5847151, at *6 (S.D.N.Y. Oct. 7, 2019) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). To amount to a constitutional violation, a prosecutor's conduct must be more than improper; rather, the misconduct must be "so prejudicial that [it] rendered the trial fundamentally unfair." *Id.* (cleaned up).

The Third Department found all 16 of petitioner's misconduct claims meritless, stating "given the overwhelming proof of defendant's guilt, the cumulative effect of the challenged comments was not so prejudicial as to deny defendant his fundamental right to a fair trial[.]" Dkt. No. 17-3 at 763-64 (internal quotations and citations omitted). Thus, this Court owes the Third Department's decision AEDPA deference and may only rule for petitioner on Claim 5 if this Court finds the Third Department's decision "objectively unreasonable." *Williams*, 529 U.S. at 409.

Considering the overwhelming proof of petitioner's guilt, this Court cannot find the prosecutor's actions "so prejudicial" as to render petitioner's trial "fundamentally unfair." *Sheard*, 2019 WL 5847151, at *6. First, petitioner admitted to the Hellijas assault in open court. Dkt. No. 17-7 at 1172-73. Second, Bingham identified petitioner as the man who shot him, Dkt. No. 17-7 at 639-50, and Bingham's girlfriend, Ashante

Ayala, testified that Bingham called her immediately after the shooting and identified petitioner as the culprit. Dkt. No. 17-7 at 983; Dkt. No. 17-3 at 430. A neighborhood witness also testified that she heard the gunshot and, saw a man matching petitioner's description walking away from the scene. Dkt. No. 17-6 at 844-851. Further, petitioner's daughter testified that petitioner sent her an article about the shooting and insinuated that he was the shooter. Dkt. No. 17-3 at 430. Thus, reviewing the prosecution's alleged misconduct in context of the entire trial, this Court agrees with the Third Department's assessment that the overwhelming proof of defendant's guilt rendered any alleged prosecutorial misconduct harmless. Accordingly, petitioner's Claim 5 and its 16 subparts are dismissed as meritless.

### G. Claim 6: Ineffective Assistance of Counsel

To succeed on a claim of ineffective assistance of counsel, a petitioner must show that: "(1) counsel's performance was objectively deficient, and (2) petitioner was actually prejudiced as a result." *Harrington v. U.S.*, 689 F.3d 124, 129 (2d Cir. 2012) (citing *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984)).

To satisfy the first *Strickland* prong, a petitioner must establish that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed [to] the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. "Such errors include omissions that cannot be explained convincingly as resulting from a sound trial strategy, but instead arose from oversight, carelessness, ineptitude, or laziness." *Wilson v. Mazzuca*, 570 F.3d 490, 502 (2d Cir. 2009) (cleaned up). When reviewing an ineffective assistance claim, courts must be "highly deferential" and approach the

analysis with a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Strickland*, 466 U.S. at 689.

The second *Strickland* prong requires a petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Courts must look to the "cumulative weight of error" to determine whether any potential prejudice "reache[s] the constitutional threshold." *Lindstadt v. Keane*, 239 F.3d 191, 202 (2d Cir. 2001). Petitioner must meet both "the performance prong [and] the prejudice prong[]" to demonstrate a Sixth Amendment violation. *Bennett v. U.S.*, 663 F.3d 71, 85 (2d Cir. 2011).

Petitioner alleges that trial counsel was ineffective because counsel failed to: (1) sever Count 6 (the Hellijas assault charge) from the remaining counts, Dkt. No. 17-3 at 66-67; (2) request lesser included charges for count 1 (attempted murder in the second degree) and count 2 of the indictment (assault in the first degree), *id.* at 67; (3) obtain an expert witness to testify about the stippling on Bingham's clothing, *id.* at 67-68; (4) communicate and consult with petitioner about the case, *id.* at 68-69; and (5) investigate the case thoroughly and locate exculpatory witnesses, *id.* at 350-51. For the reasons below, the Court finds all five claims meritless.

### 1. Improper Joinder

Petitioner argues that counsel's failure to move to sever Count 6 (the Hellijas assault) from the rest of the indictment was a "miscarriage of justice" that amounts to ineffective assistance of counsel. Trav. at 28. The Third Department rejected this exact argument when deciding petitioner's direct appeal, finding that the Hellijas and Bingham

incidents were properly joined and the proof for "each crime was separately presented, uncomplicated, and easily segregable in the jury's mind[.]"  Dkt. No. 17-3 at 762 (internal quotation marks and citations omitted).  The Third Department concluded petitioner failed to "establish that a motion for severance would have been granted or that he suffered any prejudice from the lack of severance[,]"  and, therefore, ruled counsel's failure to move to sever amounted to a "strategic . . . decision" and did not violate the Sixth Amendment.  *Id.*

As the Third Department ruled on the merits of the issue, this Court can only find for petitioner if it finds the Third Department's ruling unreasonable.  *Williams*, 529 U.S. at 409.  The Court refuses to do so.  As discussed in Section IV.D.2 above, and in the Third Department's opinion, any motion to sever the indictment would likely have failed.[10]  "Counsel cannot . . . be deemed ineffective for failing to make an argument or objection that stood little chance of success."  *Cochran v. Griffin*, No. 9:18-CV-0175 (LEK/TWD), 2021 WL 1223848, at *9 (N.D.N.Y. Mar. 31, 2021); *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) ("[C]ounsel does not have a duty to advance every nonfrivolous argument that could be made."); *United States v. Kirsh*, 54 F.3d 1062, 1071 (2d Cir. 1995) ("[T]he failure to make a meritless argument does not rise to the level of ineffective assistance" and "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.]") (internal

---

[10]  As discussed in Section IV.D.2, the two crimes joined in the indictment, the Hellijas assault and the Bingham shooting, were distinct and easily compartmentalized.  The incidents were four months apart and involved different victims; further, one involved a punch, the other involved a gun.  Based on the vast differences, the jury could easily keep the crimes "separate in the[ir] minds."  *Burrows*, 2009 WL 1514917, at *5.  Further, for both crimes, the evidence was "adequately straightforward."  *Chang An-Lo*, 851 F.2d at 556.  In fact, petitioner admitted to punching Hellijas at trial, thus negating the risk that the jury relied on any Bingham shooting evidence when convicting petitioner of the Hellijas assault.  Dkt. No. 17-7 at 1172-73.

quotation marks and citations omitted); *Jones v. Spitzer*, 1:01-CV-9754, 2003 WL 1563780, at *18 (S.D.N.Y. Mar. 26, 2003) ("Obviously, the failure to make a meritless . . . motion does not amount to ineffective assistance."). As the severance issue had little chance of success, counsel appropriately chose to focus on other issues. This Court finds such choice a sound trial decision and refuses to find counsel ineffective for failing to make a meritless motion.

Further, petitioner also offers no legitimate argument on how the combined indictment prejudiced him, and, from a review of the record, the Court cannot find any prejudice. Therefore, this Court concludes that the Third Department acted reasonably in rejecting petitioner's argument, and, thus, dismisses petitioner's claim.

### 2. Lesser and Included Charges

Petitioner alleges that counsel's failure to request lesser included charges for count 1 (attempted murder in the second degree) and count 2 of the indictment (assault in the first degree) amounted to ineffective assistance of counsel. Dkt. No. 17-3 at 67. However, as the Third Department noted, *id.* at 763, counsel did in fact request lesser and included charges. *Id.* at 580-84. As counsel did request lesser included charges, the Court refuses to find counsel deficient based on inaccurate claims.

### 3. Expert Witness

Petitioner next claims that counsel's "failure to obtain a qualified expert on the issue of stippling deprived [petitioner] of meaningful representation." Dkt. No. 17-3 at 67. Addressing the same argument, the Third Department ruled that "counsel's decision to obtain an expert witness, whom [the trial court] ultimately deemed unqualified to testify on [the stippling issue], was . . . a trial tactic that proved to be unsuccessful and

does not, in and of itself, constitute ineffective assistance of counsel[.]"  *Id.* at 763.  As the Third Department ruled on the merits of the issue, this Court can only find for petitioner if it finds the Third Department's ruling unreasonable.  *Williams*, 529 U.S. at 409.  The Court refuses to do so.

An adverse ruling is not enough to prove ineffective assistance of counsel; instead, petitioner must demonstrate counsel's "performance fell below an objective standard of reasonableness."  *Strickland*, 466 U.S. at 688.  Petitioner provides no evidence, nor does anything in the record reflect, that the attempt to certify the stippling expert by counsel fell below an objective standard of reasonableness.  The Court refuses to find counsel's performance deficient based only on an unsuccessful motion.  Accordingly, the Court dismisses petitioner's expert witness claim.

### 4. Communication

Petitioner next attempts to satisfy *Strickland* by arguing that counsel failed to communicate with him.  Dkt. No. 17-3 at 68-69.  The Third Department rejected an identical argument, stating "it is exceedingly clear from the record that counsel went to great lengths to attempt to effectively communicate with defendant."  *Id.* at 763.  As the Third Department ruled on the merits of the issue, this Court can only find for petitioner if it finds the Third Department's ruling unreasonable.  *Williams*, 529 U.S. at 409.  The Court refuses to do so.

Petitioner argues that counsel continuously failed to meet with him and such failure rendered counsel's performance deficient.  Dkt. No. 17-3 at 68-69.  However, a "failure to communicate, by itself, does not render the attorney's performance deficient." *United States v. Amirouche*, No. 1:24-CV-2596, 2024 WL 4181842, at *11 (E.D.N.Y.

Sept. 13, 2024).  Further, from an examination of the record, besides a failure to communicate with petitioner prior to sentencing, it appears counsel went above and beyond expectations to communicate with client.  For instance, counsel met with petitioner privately after cross-examining each witness to ensure all of petitioner's questions were asked.  Dkt. No. 17-3 at 450-51; *see e.g.* Dkt. No. 17-7 at 280.  Considering such efforts to communicate with petitioner, and trial counsel's otherwise competent representation, the Court cannot find the Third Department's holding unreasonable.  Accordingly, petitioner's communication claim is dismissed.

### 5.  Failure to Investigate

Lastly, petitioner asserts that counsel's failure to investigate and locate potential exculpatory witnesses amounted to a Sixth Amendment violation.  Dkt. No. 17-3 at 350-51; Trav. at 29.  A petitioner "'does not show that he was prejudiced by trial counsel's alleged deficient performance merely by asserting that certain witnesses might have supplied relevant testimony; rather, he must state exactly what testimony [the potential witnesses] would have supplied and how such testimony would have changed the result.'"  *Santana v. United States*, No. 2:15-CR-0457, 2022 WL 1527269, at *8 (E.D.N.Y. May 13, 2022) (internal quotation marks omitted).  "Courts have viewed claims of ineffective assistance of counsel skeptically when the only evidence of the import of a missing witness' testimony is from [a petitioner]."  *Id.* (cleaned up).  Petitioner states that Norman Chavis could have provided exculpatory evidence in the Bingham shooting but counsel did not try to locate Chavis.  Trav. at 29.  Petitioner claims that he and Chavis were on the phone immediately before the Bingham shooting, and, based on what Chavis heard, Chavis could have testified that petitioner accidentally shot Bingham.  *Id.*

Petitioner can establish petitioner was on the phone a few minutes after the incident, s*ee* Dkt. No. 17-7 at 1182, but a review of the record indicates that petitioner was not on the phone prior to the Bingham incident nor immediately after the incident. *See* Dkt. No. 17-7 at 639-40; Dkt. No. 17-6 at 868-878, 883-84.  Viewing petitioner's claim skeptically, as urged by *Santana*, the Court concludes that there was no evidence of petitioner being on the phone prior to the incident, and, therefore, Chavis could not testify about the nature of the shooting incident.  Thus, it seems highly unlikely petitioner's additional witness "would have changed the result[,]" *Santana*, 2022 WL 1527269, at *8 (cleaned up), and, therefore, the Court rejects petitioner's failure to investigate claim.

Petitioner failed to demonstrate that trial counsel acted deficiently, and, therefore, petitioner's Claim 5 is dismissed.

## V.    CONCLUSION

**WHEREFORE**, it is

**ORDERED** that the Petition, Dkt. No. 1, is **DENIED AND DISMISSED** in its entirety;

**ORDERED** that the Court declines to issue a Certificate of Appealability.  28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'") (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003))).  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals. *See* FED. R. APP. P. 22(d); 2d Cir. R. 22.1.

**ORDERED** that the Clerk serve a copy of this Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated:  February 26, 2025
         Syracuse, New York

Glenn T. Suddaby
U.S. District Judge